UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
HARRIANN C. BERNSTEIN,        :
                              :        Civil Action No.
              Plaintiff,      :        08-cv-3796 (NLH)
                              :
      v.                      :        OPINION
                              :
CITY OF ATLANTIC CITY, et al.,:
                              :
              Defendants.     :
_____:
```

**APPEARANCES**:
RANDOLPH CRAIG LAFFERTY
YOUNGBLOOD, LAFFERTY, SAMPOLI, PA
Cornerstone Commerce Center
1201 New Road, Suite 230
Linwood, NJ 08221-1159
*Attorney for Plaintiff Harriann C. Bernstein*

STEVEN SAMUEL GLICKMAN
RUDERMAN & GLICKMAN
675 MORRIS AVENUE
SUITE 100
SPRINGFIELD, NJ 07081
*Attorney for Defendants City of Atlantic City, Former Mayor of
Atlantic City Lorenzo Langford, Former Business Administrator of
Atlantic City Benjamin Fitzgerald, Former Mayor of Atlantic City
Robert Levy and Business Administrator of Atlantic City Domenic
Capella*

SUSAN E. VOLKERT
DECOTIIS, FITZPATRICK, COLE & WISLER, LLP
GLENPOINTE CENTRE WEST
500 FRANK W. BURR BLVD.
TEANECK, NJ 07666
*Attorney for Defendant Former Business Administrator of Atlantic
City Benjamin Fitzgerald*

JAMES J. LEONARD , JR
LEONARD LAW GROUP, LLC
1200 ATLANTIC AVENUE
SUITE 201
ATLANTIC CITY, NJ 08401
*Attorney for Business Administrator of Atlantic City Domenic
Capella*

**HILLMAN, District Judge**

Plaintiff, Harriann C. Bernstein, alleges Defendants, City of Atlantic City (hereinafter "Atlantic City"), former Mayors of Atlantic City Lorenzo Langford[1] (hereinafter "Mayor Langford" or "Mr. Langford") and Robert Levy[2] (hereinafter "former Mayor Levy" or "Mr. Levy"), former Business Administrator of Atlantic City Benjamin Fitzgerald[3] (hereinafter "Mr. Fitzgerald") and Business Administrator of Atlantic City Domenic Capella[4] (hereinafter "Mr. Capella") violated her state and federal civil rights. Defendants deny these claims and move for summary judgment [Doc. 46]. For the reasons expressed below, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

**I.    JURISDICTION**

Plaintiff has alleged several federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as state law claims arising

---

[1]  Mr. Langford served as mayor from January 2, 2002 until December 31, 2005.  On January 1, 2008, Mr. Langford was re-elected to a second term as mayor, and he is presently in office.

[2]  Mr. Levy served as mayor from January 1, 2006 until his retirement in the fall of 2007.

[3]  Mr. Fitzgerald served as the Business Administrator during former Mayor Langford's first term, from January 2, 2002 until December 31, 2005.

[4]  Incorrectly pled as "Dominic Capella".  Mr. Capella served as Assistant Business Administrator during former Mayor Langford's first term and as Business Administrator during Mr. Levy's tenure as mayor.  Upon the commencement of Mr. Langford's second term as mayor, Mr. Capella returned to the position of Assistant Business Administrator.

under the New Jersey Law Against Discrimination (hereinafter "NJLAD") and the Conscientious Employment Protection Act (hereinafter "CEPA").  The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## II.  BACKGROUND[5]

Plaintiff, Harriann C. Bernstein, a homosexual female, commenced her employment with Atlantic City in 1983 as an Administrative Analyst.  Several years later, she was promoted to Municipal Recycling Coordinator, a supervisory position, and, eventually, served as the President of the Atlantic City Supervisor's Association, a labor union.

On or about January 2, 2002, former Mayor Langford hired Joseph Gindhart, Esq. (hereinafter "Mr. Gindhart"), as an independent contractor, to serve as the Atlantic City Solicitor.[6] Several weeks later, on January 17, 2002, Plaintiff encountered Mr. Gindhart in the City's Human Resources Office.  Without provocation, Mr. Gindhart approached Plaintiff, grabbed her by

---

[5]  Given that the present matter comes before the Court by way of Defendants' Motion for Summary Judgment, Plaintiff's evidence "is to be believed and all justifiable inferences are to be drawn in [her] favor." *See* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

[6]  Mr. Gindhart is not a party to this action.

the waist and stated "I can tell what you need is a really good goose in the ass . . . but you're not ready for it yet."[7] Doc. 46, Ex. 2, Pl. Dep. 12.  Later that day, Plaintiff complained of the incident to the Mayor's Chief of Staff, who told her to speak with Mr. Fitzgerald.  Plaintiff then wrote a memorandum to Mr. Fitzgerald detailing the incident with Mr. Gindhart.  After he received the memorandum, Mr. Fitzgerald initiated a face-to-face meeting with Plaintiff.  Shortly thereafter, Mr. Fitzgerald called Mr. Gindhart into his office and confronted him about Plaintiff's accusations.  After this meeting, Mr. Gindhart returned to his office and, in the presence of several subordinate employees, referred to Plaintiff as a "dike bitch."  Doc. 46, Ex. 1, Compl. ¶ 12.  The City then commenced an investigation into Mr. Gindhart's conduct, and concluded that he acted in an unprofessional manner.  Subsequently, on or about April 2, 2002, Mr. Gindhart resigned as Atlantic City Solicitor.[8]

The incident between Plaintiff and Mr. Gindhart was widely publicized in the media, and Plaintiff was interviewed by varies news outlets several times.  According to Plaintiff, the media

---

[7] According to Plaintiff, Mr. Gindhart was aware of her sexual orientation.

[8] Mr. Gindhart has not been employed by the City since his separation, nor has he had any contact with Plaintiff since the alleged incident.

attention, the filing of legal charges against Mr. Gindhart[9] and her complaints to the City about Mr. Gindhart's conduct caused her to suffer numerous repercussions at work, which began in June 2002 and continued through the filing of her present Complaint.[10]

---

[9]   Plaintiff initially filed suit against Atlantic City, former Mayor Langford and Mr. Fitzgerald in 2002.  In 2004, the parties stipulated to a "Voluntary Dismissal and Waiver of Limitation Claims by Defense." *See* Doc. 53, Exs. 4 & 14.

[10]   Plaintiff claims Defendants retaliated against her in thirty-six (36) ways: (a) Loss of her title as a division head and exclusion from attendance at division head meetings; (b) Removal from her normal office space to a cubicle with no quiet work area or privacy; (c) Removal of her privileges regarding the use of an official city vehicle that she used to perform city duties; (d) An unfounded claim of insubordination and unsubstantiated disciplinary action when she attempted to collect money for a sick child, when it was common practice for employees of Atlantic City to encourage involvement in charitable causes; (e) Improper limitation on her medical benefits, including refusal to make a payment which was covered under sick and vacation leave; (f) Improper limitation of her benefits pursuant to the Family Medical Leave Act; (g) Denial of promotion to Executive Assistant; (h) Improperly converting a grievance hearing into a disciplinary hearing; (I) Being held to a different standard when she attempted to collect money for a child's trip (j) Effect by the City to ignore established procedures; (k) Impeding professional advancement by ignoring civil service rules; (l) denying respect and latitude prescribed for Union Presidents; (m) elimination of her presence at meetings after she questioned separation of church and state; (n) Permitting a hostile work environment; (o) Failing to respond to repeated communications regarding appointment to positions; (p) Refusing city council's request to appoint her to the position of Executive Assistant; (q) Violating the chain of command; (r) Fraudulent stating that all Executive Assistant titles were being eliminated then re-created all positions; (s) Approving office equipment and removing it on several occasions; (t) Filing unfounded and improper charges of violating co-workers' privacy rights; (u) Wrongly accusing her of illicitly photographing workers with a cell phone; (v) Relocating her from City Hall to the City Yard, which has long been considered "punishment"; (w) Housing Plaintiff six feet from diesel fumes; (x) Continuing to

On December 31, 2007, Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Atlantic County. Within a month of their receipt of the summons, on July 30, 2008, Defendants removed this action to federal court.  On November 15, 2010, Defendants moved for summary judgment.  Plaintiff opposes entry of summary judgment.

## III. DISCUSSION

### A.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

---

base Plaintiff's subordinate in City Hall; (y) Denying relocation of computer equipment; (z) Refusing to relocate a specialized printer; (aa) Denying continued access to e-mail and other business tools; (bb) Permitting Plaintiff to be bulled and failing to take corrective action; (cc) Reversing policy and prohibiting Plaintiff her city vehicle from the garage; (dd) Issuing unfounded formal warning notices; (ee) Failing to provide her with a designated parking space; (ff) Ignoring continuous vandalism to Plaintiff's personal vehicle; (gg) Ongoing distortion of facts; (hh) Frequently assigning tasks that were outside of the scope of her responsibilities; (ii) Creating a stressful environment; and (jj) Other actions that were unfair and retaliatory.

party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Counts One, Two and Three of Plaintiff's Complaint**

In Defendants' brief in support of their Motion for Summary Judgment, they contend that Plaintiff's NJLAD claims with respect

7

to Counts One, Two and Three of her Complaint are barred by the statute of limitations.  In Plaintiff's Opposition brief, she cites to a "Stipulation Between the Parties for Voluntary dismissal and Waiver of Limitation Claims by the Defense." Doc. 53, Ex. 14.  According to this agreement, the parties stipulated that:

> the claims of Harriann C. Bernstein [may] be raised in a newly filed Complaint in the Superior Court, and further that any and all claims which have been raised . . . may be renewed in the newly filed Complaint so as to preclude any claim or defense on the basis of statute of limitation, latches or delay

Id.  Defendants acknowledge that this stipulation renders their statute of limitations defense inapplicable.  However, in addition to this concession, Defendants raise several arguments not previously briefed in support of their Motion.  They specifically contend that summary judgment should be entered in their favor because Plaintiff failed to establish a *prima facie* case of either sexual harassment or a hostile work environment, and that she cannot impute vicarious liability onto Defendants for Mr. Gindhart's conduct.  In the disposition of this Motion, the Court will not consider any of Defendants' arguments raised in their reply brief.

A party may not raise new arguments in their reply brief. Bayer AG v. Schein Pharm., Inc., 129 F. Supp.2d 705, 716 (D.N.J. 2001); YSM Realty, Inc. v. Grossbard, No. 10-5987, 2011 WL 735717, at * 3 n. 3 (D.N.J. Feb. 23, 2011) ("The Court will not

8

entertain arguments not raised in Defendants' initial brief");
Goldenberg v. Indel, Inc., 741 F. Supp.2d 618, 630 n. 9 (D.N.J.
2010) (holding similarly).  A reply brief's purpose, as evidenced
by its name, 'reply brief,' is to "respond[] to the opposition
brief and explains a position that the respondent has refuted."
Halprin v. Verizon Wireless Serv., LLC., No. 07-4015, 2008 WL
961239, at * 8 (D.N.J. April 8, 2008); *see* Elizabethtown Water
Co. v. Hartford Cas. Ins. Co., 998 F.Supp. 447, 458 (D.N.J. 1998)
("It is axiomatic that reply briefs should respond to the
respondent's arguments or explain a position in the initial brief
that the respondent has refuted").  Arguments raised for the
first time in reply briefs should not be considered by courts
because the Local Rules of Civil Procedure prohibit, without
leave of court, sur-replies.  Consequently, the party opposing
summary judgment has no opportunity to respond to any newly
raised arguments contained within the brief. Schein Pharm., Inc.,
129 F. Supp.2d at 716. *See* Halprin, 2008 WL 961239 at * 8 (citing
Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398
(3d Cir. 1994) ("An issue is waived unless a party raises it in
its opening brief")).

In the present matter, Defendants improperly raised new
arguments in their reply brief.[11]  Since arguments raised for the

---

[11]  The Court acknowledges that Defendants raised these
arguments because Plaintiff's opposition brief cited evidence
that completely barred the only argument Defendants relied upon

first time in a reply brief are not to be considered in support of a Motion for Summary Judgment, the Court will deny, without prejudice, Defendants' Motion with respect to Counts One, Two and Three of Plaintiff's Complaint.  The Court, however, will permit Defendants the opportunity to remedy this error and file, within sixty days, a second motion for summary judgment.

    **C.   Count Four of Plaintiff's Complaint**[12]

Although briefed by Defendants, the Court does not construe Count Four of Plaintiff's Complaint to allege a claim for either sexual discrimination or hostile work environment under the NJLAD.  Rather, the Court construes Count Four to allege a claim of retaliation under the NJLAD.  Since Defendants failed to both brief and move for summary judgment with respect to a retaliation claim, the Court will deny, without prejudice, summary judgment on Count Four.  The Court, however, will permit Defendants the opportunity to remedy this error and file, within sixty days, a second motion for summary judgment.[13]

---

in their opening brief.

[12]  Inadvertently, Plaintiff included two count four's in her Complaint.  The Court will refer to the first as Count Four and the second as Count Four(a).

[13]  If Defendants chose to file a second motion for summary judgment, they are advised to address **all** of Plaintiff's thirty-six claims of retaliation and specifically argue why they are entitled to summary judgment with respect to each retaliatory claim.

### D.  Count Four(a) of Plaintiff's Complaint

In Count Four(a) of her Complaint, Plaintiff argues that Defendants violated CEPA, N.J.S.A. 34:19-1, et seq.  Enacted in 1986, this law provides protection from retaliation by their employer to "whistleblowers" who report their employers' illegal activity. *See* Reynolds v. TCM Sweeping, Inc., 340 F. Supp.2d 541, 545 (D.N.J. 2004) (citing Hernandez v. Montville Twp. Bd. of Educ., 808 A.2d 128 (N.J. Super. Ct. App. Div. 2002)).  "CEPA is remedial social legislation designed to promote two complementary public purposes: 'to protect and [thereby] encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dannunzio v. Prudential Ins. Co. of Am., 927 A.2d 113, 120 (N.J. 2007) (citations omitted).  "As broad, remedial legislation, the statute must be construed liberally." Id.

The pretext theory of discrimination under CEPA triggers a burden-shifting, three-step process, not unlike that used for claims of gender and sexual orientation discrimination. *See* Kolb v. Burns, 727 A.2d 525, 530-31 (N.J. Super. Ct. App. Div. 1999). First, the plaintiff must prove a *prima facie* case of retaliation. Id.  Once established, the burden shifts to defendants to provide a non-retaliatory reason for the adverse employment decisions. Id.  Upon such a showing, the burden shifts back to the plaintiff to explain why the defendants' reason is

pretextual. Id.  In order to show that the reason is pretextual, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id. at 531 (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (other citations omitted)).

In order to prove a *prima facie* claim, "[a] successful plaintiff under CEPA must show four elements: (1) He reasonably believed that an activity, policy or practice of defendant, his employer, was in violation of a law, rule or regulation promulgated pursuant to law or was fraudulent or criminal; (2) He objected to or complained about the activity, policy or practice; (3) Retaliatory action[14] was taken against him (i.e. adverse employment action occurred); and (4) There was a causal link between the plaintiff's action and the retaliatory or adverse action of the defendant employer." Reynolds, 340 F. Supp.2d at 545 (citing McCullough v. Atlantic City, 137 F. Supp.2d 557, 573 (D.N.J. 2001)).

---

[14]  Under CEPA, "retaliatory action" is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).

12

CEPA claims are subject to a one year statute of limitations period, N.J.S.A. 34:19-5, and accrue on the date of the adverse employment action. Ivan v. County of Middlesex, 595 F. Supp.2d 425, 467 (D.N.J. 2009).  This limitation's period, however, does not "begin to run until the wrongful action ceases." Green v. Jersey City Bd. of Educ., 828 A.2d 883, 890 (N.J. 2003) (quoting Wilson v. Wal-Mart Stores, 729 A.2d 1006, 1010 (N.J. 1999)).  To determine when a wrongful action ceases, courts apply the continuing violation theory.  This doctrine "was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination.  In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts." Roa v. Roa, 985 A.2d 1225, 1233 (N.J. 2010).  Consequently, "[r]etaliation as defined by CEPA need not be a single discrete action. . . . [rather,] [a claim may include] many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green, 828 A.2d at 891.

However, if the retaliation claim is a single discrete action,[15] it is individually actionable at the time of its

_____

[15] The non-exhaustive list of discrete discriminatory acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial

occurrence and "cannot be resurrected by being aggregated and labeled [as] continuing violations." O'Connor v. City of Newark, 440 F.3d 125, 129 (3d Cir. 2006)); *see* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discriminatory act starts a new clock for filing charges alleging that act"); *see also* Roa, 985 A.2d at 1233 ("What the [continuing violation] doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable").  In other words, even if a court concludes that the continuing violation theory is applicable to a plaintiff's claims, acts that are individually actionable are still barred by CEPA's one year limitation period. *See* id. at 1233 ("[T]he continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act").  This is especially true if the plaintiff knew "or with the exercise of reasonable diligence should have known, that each act was discriminatory." Hall v. St. Joseph's Hosp., 777 A.2d 1002, 1011 (N.J. Super. Ct. App. Div. 2001).  Courts should not permit a plaintiff to "sit back and accumulate all the discriminatory acts

---

of training, wrongful accusation." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

and sue on all within the statutory period applicable to the last one." Id. (quoting Moskowitz v. Trs. of Purdue Univ., 5 F.3d 279, 282 (7th Cir. 1993)).

To resolve the instant matter, the Court divides Plaintiff's thirty-six alleged retaliatory actions into three groups:[16] (1) discrete acts that occurred prior to December 31, 2006; (2) actions that occurred after December 31, 2006; and (3) the remaining acts.

Defendants' alleged retaliatory conduct encompassed in the first group, such as Plaintiff's transfer to the City Yard, removal of her privileges regarding the city vehicle and removal from her office to a cubicle, are discrete acts because when they are considered individually and independently, they involve either a failure to promote, demotion, transfer, denial of transfer, wrongful suspension, wrongful discipline, wrongful accusation or denial or termination of benefits.[17] See O'Connor,

_____

[16]   With respect to the December 31, 2006 date, the Court utilizes it as the basis for the division of Plaintiff's claims into groups because Plaintiff filed her Complaint on December 31, 2007, and CEPA has a one year statute of limitations. Consequently, one year prior to the filing of her Complaint was December 31, 2006.

[17]   These acts include: (a) Plaintiff's Loss of title as a division head and exclusion from attendance at division head meetings (b) Her Removal from her normal office space to a cubicle with no quiet work area or privacy; (c) Removal of her privileges regarding the use of an official city vehicle that she used to perform city duties; (d) An unfounded claim of insubordination and unsubstantiated disciplinary action when she attempted to collect money for a sick child, when it was common

440 F.3d at 127; *see also* <u>Shepherd v. Hunterdon Developmental</u>
<u>Ctr.</u>, 803 A.2d 611, 627 (N.J. 2002) (finding that an unwelcome
transfer is a discrete act); *see also* <u>Sgro v. Bloomberg L.P.</u>, No.
05-731, 2008 WL 918491, at * 5 -6 (D.N.J. March 31, 2008), *aff'g*
*in part, rev'd in part*, 331 Fed. Appx. 932 (3rd Cir. 2009)
(noting that an office move to an undesirable location is a
discrete act and not subject to the continuing violation
doctrine).  In other words, the conduct involves acts that are
actionable in and of themselves at the time of their occurrence.
Moreover, Plaintiff either was aware that each act was
discriminatory at the time of its occurrence or should have been
aware through the exercise of reasonable diligence.  The Court,
therefore, concludes that because these discrete retaliatory acts
occurred prior to December 31, 2006, they are barred by CEPA's
one year statute of limitations period and are not actionable

---

practice for employees of Atlantic City to encourage involvement
in charitable causes; (f) Improper limitation of her benefits
pursuant to the Family Medical Leave Act; (g) Denial of promotion
to Executive Assistant; (h) Improperly converting a grievance
hearing into a disciplinary hearing; (I) Being held to a
different standard when she attempted to collect money for a
child's trip; (k) Impeding professional advancement by ignoring
civil service rules; (p) Refusing city council's request to
appoint her to the position of Executive Assistant; (t) Filing
unfounded and improper charges of violating co-workers' privacy
rights; (u) Wrongly accusing her of illicitly photographing
workers with a cell phone; (v) Relocating her from City Hall to
the City Yard, which has long been considered "punishment"; (x)
Continuing to base Plaintiff's subordinate in City Hall; (cc)
Reversing policy and prohibiting Plaintiff her city vehicle from
the garage; (dd) Issuing unfounded formal warning notices; and
(ee) Failing to provide her with a designated parking space.

under the continuing violations doctrine.

With respect to the allegedly retaliatory actions encompassed in the second[18] and third groups,[19] the Court concludes that even if the continuing violation doctrine applied, Plaintiff failed to establish a *prima facie* case under the CEPA. Not only has Plaintiff failed to prove that the remaining actions are adverse, but she also failed to offer any evidence of a casual link between her protected activity under CEPA and Defendants' allegedly retaliatory actions.

To constitute an adverse action under CEPA, the alleged retaliatory act must seriously intrude "into the employment relationship." Beasley v. Passaic County, 873 A.2d 673, 685 (N.J.

---

[18] These actions include: (j) Effect by the City to ignore established procedures; (n) Permitting a hostile work environment; (m) elimination of her presence at meetings after she questioned separation of church and state; (o) Failing to respond to repeated communications regarding appointment to positions; (q) Violating the chain of command; (r) Fraudulently stating that all Executive Assistant titles were being eliminated then re-created all positions; (s) Approving office equipment and removing it on several occasions; (w) Housing Plaintiff six feet from diesel fumes; (y) Denying relocation of computer equipment; (z) Refusing to relocate a specialized printer; (aa) Denying continued access to e-mail and other business tools; (hh) Frequently assigning tasks that were outside of the scope of her responsibilities; (ii) Creating a stressful environment; and (jj) Other actions that were unfair and retaliatory.

[19] These actions include: (e) Improper limitation on Plaintiff's medical benefits, including refusal to make a payment which was covered under sick and vacation leave; (l) denying respect and latitude prescribed for Union Presidents; (bb) Permitting Plaintiff to be bulled and failing to take corrective action; (ff) Ignoring continuous vandalism to Plaintiff's personal vehicle; (gg) Ongoing distortion of facts.

Super. Ct. App. Div. 2005).  Courts have found that these types
of adverse actions include discharges, suspensions, transfers,
terminations, changes affecting the length of the workday,
compensation decreases, change in the amount of hours worked,
termination of fridge benefits, alterations in promotional
procedures or changes in the plaintiff's office arrangements and
facilities. Id. at 685-86.  Presently, none of the actions
detailed in footnotes eighteen or nineteen constitute adverse
employment acts because they do not involve any of the
aforementioned conduct.  Nor do they have no impact of
Plaintiff's compensation or rank. See Noto v. Skylands Cmty.
Bank, 2005 WL 2362491, at *4 (N.J. Super. Ct. App. Div. Sept. 28,
2005) (citing Hancock v. Borough of Oaklyn, 790 A.2d 186 (N.J.
Super. Ct. App. Div. 2002)) ("To qualify as an adverse employment
action under CEPA, the employer's action must have a significant
impact on the employee's compensation or rank").  Rather,
Plaintiff's claims are more accurately characterized as mere
complaints about mildly unpleasant workday experiences. Hancock,
790 A.2d at 193 (holding that "Plaintiffs' allegations of
retaliatory action relate either to general actions that made
plaintiffs' jobs mildly unpleasant" do not constitute adverse
actions under CEPA); see Beasley, 873 A.2d at 685 ("Adverse
employment actions do not qualify as retaliation under CEPA
'merely because they result in a bruised ego or injured pride on

18

the part of the employee'") (quoting in part <u>Klein v. Univ of Med. & Dentistry</u>, 871 A.2d 681 (N.J. Super. Ct. App. Div. 2005)) (internal citations omitted). The purpose of CEPA is to "prevent retaliatory action against whistle-blowers," not "assuage egos or settle internal disputes at the workplace." <u>Beasley</u>, 873 A.2d at 685. The Court, therefore, concludes Plaintiff failed to prove that Defendants actions were adverse.

Plaintiff also failed to establish the casual link between her protected activity under CEPA and Defendants' allegedly retaliatory actions. Beyond the conclusory statements contained in her opposition brief, Plaintiff offered no evidence to prove this element of her *prima facie* case. Moreover, the record does not contain any circumstantial evidence that supports a casual link, nor does it indicate any pattern of antagonism by Defendants. Furthermore, with respect to the alleged retaliatory conduct described in group two, the Court finds that any casual link between that conduct and Plaintiff's protected activity is extraordinarily tenuous. Plaintiff claims that the retaliatory conduct in 2007 is related to the protected activity that occurred in 2002. Plaintiff, however, fails to provide any evidence to explain how incidents that occurred approximately five years apart and under different mayoral administrations are casually linked. *See* <u>Calabria v. State Operated Sch. Dist. for City of Paterson</u>, No. 06-6256, 2008 WL 3925174, at * 6 (D.N.J.

19

Aug. 26, 2008) (finding that "timing of the retaliatory action and any evidence of ongoing antagonism" is important for determining whether a casual connection exists between the protected activity and adverse employment action); *see also* Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (noting that the Third Circuit has previously held that "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive,' and determined that nineteen months was too attenuated to create a genuine issue of fact").  Therefore, the Court will enter summary judgment in favor of Defendants with respect to Plaintiff's CEPA claims.

### E.    Counts Five and Six of Plaintiff's Complaint

In Counts five and six of her Complaint, Plaintiff alleges that Defendants violated the First, Fourth, Eighth, Ninth and Fourteenth Amendments.  Defendants only move for summary judgement with respect to the First Amendment claim.  To establish a *prima facie* case of retaliation under the First Amendment, a plaintiff must prove: "(1) he engaged in protected speech, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by plaintiff's protected speech." Wilson v. Zielke, 382 Fed. Appx. 151, 153 (3d Cir. 2010) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.

2003)).  Courts have concluded that "[t]his test is very similar
to the four-part test for analyzing a CEPA claim." Clayton v.
City of Atlantic City, 722 F. Supp.2d 581, 590 (D.N.J. 2010)
(citing Espinosa v. County of Union, 212 Fed.Appx. 146, 153 (3d
Cir. 2007)); see Crane v. Yurick, 287 F. Supp.2d 553, 561 (D.N.J.
2003) (noting that the test under CEPA is "nearly identical to
the First Amendment analysis" of retaliation claims).
Consequently, the Court will apply its CEPA analysis, detailed
above, to Plaintiff's First Amendment claim.

　　　Presently, Plaintiff's First Amendment claim arises out of
the same events giving rise to her CEPA claim.  Therefore, for
the reasons expressed above, the Court reaches the same result
and will enter summary judgment in favor of Defendants with
respect to the nineteen alleged retaliatory actions described in
footnotes eighteen and nineteen.  For its disposition of
Plaintiff's remaining claims, the Court will determine whether
Plaintiff proved a prima facie case of retaliation under the
First Amendment.[20]  With respect to the first element of her
prima facie case, Defendants seemingly concede that Plaintiff
engaged in protected speech.  They, however, contend Plaintiff
failed to prove the remaining two elements, that she suffered
retaliation for the speech and that the speech was a substantial

---

[20]  The Court is at a loss to understand why Defendants
failed to argue a statute of limitations defense.

factor in the alleged retaliatory action.

After an examination of the evidence on record, the Court concludes Plaintiff failed to "show that the protected activity was a substantial or motivating factor in the alleged retaliatory action." Brennan v. Norton, 350 F.3d 399, 414 (3d Cir. 2003). Beyond mere conclusory allegations, Plaintiff does not offer any evidence of any relationship between Defendants' allegedly retaliatory conduct and her speech. *See* id. at 420 (concluding that although a nine month gap between the protected speech and the alleged retaliation "is not, by itself, sufficient to preclude an inference of causation," the claim fails when the plaintiff offers no evidence beyond its claim of causation between the incidents). Moreover, for each of Plaintiff's allegedly retaliatory actions detailed in footnote seventeen, Defendants offered evidence that their actions were supported by nondiscriminatory reasons.[21] The Court, therefore, will enter summary judgment in favor of Defendants with respect to Plaintiff's First Amendment claim.

### F.   Counts Seven and Eight of Plaintiff's Complaint

In Counts seven and eight of her Complaint, Plaintiff alleges that Defendant Atlantic City was deliberately indifferent to her constitutional rights because it failed to adequately

---

[21]   Plaintiff failed to either argue or submit any evidence that these nondiscriminatory reasons served as a pretext for discrimination.

train its municipal officials and had a policy and custom of deliberate indifference to the constitutional rights of its employees.  Defendants' brief in support of their Motion for Summary Judgment, however, fails to address either of these claims.  The Court, therefore, cannot enter summary judgment in favor of Defendant with respect to Counts seven and eight of Plaintiff's Complaint.

## IV.  <u>CONCLUSION</u>

For the reasons expressed above, Defendants' Motion for Summary Judgment [Doc. 46] will be granted in part and denied in part.  An appropriate order will be entered.


Date:  June 27, 2011                   s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.


23