UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
HARRIANN C. BERNSTEIN,        :
                              :        Civil Action No.
            Plaintiff,        :        08-cv-3796 (NLH)
                              :
      v.                      :        **OPINION**
                              :
CITY OF ATLANTIC CITY, et al.,:
                              :
            Defendants.       :
_____:

**APPEARANCES**:
RANDOLPH CRAIG LAFFERTY
YOUNGBLOOD, LAFFERTY, SAMPOLI, PA
Cornerstone Commerce Center
1201 New Road, Suite 230
Linwood, NJ 08221-1159
*Attorney for Plaintiff Harriann C. Bernstein*

STEVEN SAMUEL GLICKMAN
RUDERMAN & GLICKMAN
675 MORRIS AVENUE
SUITE 100
SPRINGFIELD, NJ 07081
*Attorney for Defendants City of Atlantic City, Former Mayor of*
*Atlantic City Lorenzo Langford, Former Business Administrator of*
*Atlantic City Benjamin Fitzgerald, Former Mayor of Atlantic City*
*Robert Levy and Business Administrator of Atlantic City Domenic*
*Capella*

SUSAN E. VOLKERT
DECOTIIS, FITZPATRICK, COLE & WISLER, LLP
GLENPOINTE CENTRE WEST
500 FRANK W. BURR BLVD.
TEANECK, NJ 07666
*Attorney for Defendant Former Business Administrator of Atlantic*
*City Benjamin Fitzgerald*

JAMES J. LEONARD, JR
LEONARD LAW GROUP, LLC
1200 ATLANTIC AVENUE
SUITE 201
ATLANTIC CITY, NJ 08401
*Attorney for Business Administrator of Atlantic City Domenic*
*Capella*

**HILLMAN, District Judge**

Plaintiff, Harriann C. Bernstein, alleges defendants, City of Atlantic City (the "City"), former Mayors of Atlantic City Lorenzo Langford[1] ("Mayor Langford") and Robert Levy[2] ("former Mayor Levy"), former Business Administrator of Atlantic City Benjamin Fitzgerald[3] ("Fitzgerald") and Business Administrator of Atlantic City Domenic Capella[4] ("Capella") violated her state and federal civil rights.  Defendants filed a motion for summary judgment that was granted in part and denied in part without prejudice.  Defendants filed a second motion for summary judgment regarding the claims that were denied without prejudice.  For the reasons expressed below, defendants' second motion will be granted.

---

[1]  Mr. Langford served as mayor from January 2, 2002 until December 31, 2005.  On November 4, 2008, Mr. Langford was re-elected to a second term as mayor, and he is presently in office.

[2]  Mr. Levy served as mayor from January 1, 2006 until his retirement in the fall of 2007.

[3]  Mr. Fitzgerald served as the Business Administrator during former Mayor Langford's first term, from January 2, 2002 until December 31, 2005.

[4]  Incorrectly pled as "Dominic Capella".  Mr. Capella served as Assistant Business Administrator during former Mayor Langford's first term and as Business Administrator during Mr. Levy's tenure as mayor.  Upon the commencement of Mr. Langford's second term as mayor, Mr. Capella returned to the position of Assistant Business Administrator.

I.   **JURISDICTION**

Plaintiff has alleged several federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as state law claims arising under the New Jersey Law Against Discrimination ("NJLAD").  The Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

II.   **BACKGROUND**

The undisputed facts underlying plaintiff's claims were set forth at length in this Court's previous Opinion and are repeated here, in relevant part, for ease of reference.  See Bernstein v. City of Atlantic City, No. 08-3796, 2011 WL 2559369 (D.N.J. June 27, 2011).  Plaintiff, Harriann C. Bernstein, a homosexual female, commenced her employment with Atlantic City in 1983 as an Administrative Analyst.  Several years later, she was promoted to Municipal Recycling Coordinator, a supervisory position, and, eventually, served as the President of the Atlantic City Supervisor's Association, a labor union.

On or about January 2, 2002, former Mayor Langford hired Joseph Gindhart, Esq. ("Gindhart"), as an independent contractor, to serve as the Atlantic City Solicitor.[5]  About two weeks later, on January 17, 2002, plaintiff encountered Gindhart

_____

[5]  Gindhart is not a party to this action.

3

in the City's Human Resources Office.  Without provocation, Gindhart approached plaintiff, grabbed her by the waist and stated "I can tell what you need is a really good goose in the ass . . . but you're not ready for it yet."[6]   Later that day, plaintiff complained of the incident to the Mayor's Chief of Staff, who told her to speak with the City's Business Administrator Benjamin Fitzgerald.  After unsuccessfully trying to reach Fitzgerald by telephone, plaintiff wrote a memorandum to him detailing the incident with Gindhart.  After he received the memorandum, Fitzgerald immediately telephoned plaintiff and initiated a face-to-face meeting.  Shortly thereafter, Fitzgerald called Gindhart into his office and confronted him about plaintiff's accusations.  After this meeting, Gindhart returned to his office and, in the presence of several subordinate employees, said he would "get that fuck'en bitch dike."  Plaintiff also alleges that in subsequent days and weeks Gindhart would look at her with "deliberately intense glaring stares."

On February 25, 2002, Fitzgerald instructed Gindhart to remain away from plaintiff's office in City Hall.  On February 28, 2002, the City commenced an investigation into Gindhart's conduct, and interviewed approximately fifteen (15) different City employees.  On March 22, 2002, a report based on this

---

[6]  According to plaintiff, Gindhart was aware of her sexual orientation.

4

investigation was issued that concluded that Gindhart acted in an
unprofessional manner.  Subsequently, on or about April 2, 2002,
Gindhart resigned as Atlantic City Solicitor.  Gindhart has not
been employed by the City since his separation, nor has he had
any contact with plaintiff since the alleged incident.

The incident between plaintiff and Gindhart was widely
publicized in the media, and plaintiff was interviewed by various
news outlets several times.  According to plaintiff, the media
attention, the filing of legal charges against Gindhart[7] and her
complaints to the City about Gindhart's conduct caused her to
suffer numerous repercussions at work, which began in June 2002
and continued through the filing of her present complaint.[8]

---

[7]  Plaintiff initially filed suit against Atlantic City,
former Mayor Langford and Mr. Fitzgerald in 2002.  In 2004, the
parties stipulated to a "Voluntary Dismissal and Waiver of
Limitation Claims by Defense."

[8]  Plaintiff claims defendants retaliated against her in
thirty-six (36) separate ways.  As set forth in her complaint
they are: (a) Loss of her title as a division head and exclusion
from attendance at division head meetings; (b) Removal from her
normal office space to a cubicle with no quiet work area or
privacy; (c) Removal of her privileges regarding the use of an
official city vehicle that she used to perform city duties; (d)
An unfounded claim of insubordination and unsubstantiated
disciplinary action when she attempted to collect money for a
sick child, when it was common practice for employees of Atlantic
City to encourage involvement in charitable causes; (e) Improper
limitation on her medical benefits, including refusal to make a
payment which was covered under sick and vacation leave; (f)
Improper limitation of her benefits pursuant to the Family
Medical Leave Act; (g) Denial of promotion to Executive
Assistant; (h) Improperly converting a grievance hearing into a
disciplinary hearing; (I) Being held to a different standard when
she attempted to collect money for a child's trip; (j) Effort to

5

On December 31, 2007, plaintiff filed her second complaint in the Superior Court of New Jersey, Law Division, Atlantic County.  Within a month of their receipt of the summons, on July 30, 2008, defendants removed this action to Federal court.  On November 15, 2010, defendants moved for summary judgment.  The Court granted defendant's motion in part and denied it in part.  The Court dismissed plaintiff's claim brought pursuant to the Conscientious Employment Protection Act ("CEPA"), and her claim brought pursuant to 42 U.S.C. § 1983 for a First

---

ignore established procedures; (k) Impeding professional advancement by ignoring civil service rules; (l) denying respect and latitude prescribed for Union Presidents; (m) elimination of her presence at meetings after she questioned separation of church and state; (n) Permitting a hostile work environment; (o) Failing to respond to repeated communications regarding appointment to positions; (p) Refusing city council's request to appoint her to the position of Executive Assistant; (q) Violating the chain of command; ® Fraudulently stating that all Executive Assistant titles were being eliminated then re-created all positions; (s) Approving office equipment and removing it on several occasions; (t) Filing unfounded and improper charges of violating co-workers' privacy rights; (u) Wrongly accusing her of illicitly photographing workers with a cell phone; (v) Relocating her from City Hall to the City Yard, which has long been considered "punishment"; (w) Housing plaintiff six feet from diesel fumes; (x) Continuing to base plaintiff's subordinate in City Hall; (y) Denying relocation of computer equipment; (z) Refusing to relocate a specialized printer; (aa) Denying continued access to e-mail and other business tools; (bb) Permitting Plaintiff to be bullied and failing to take corrective action; (cc) Reversing policy and prohibiting Plaintiff her city vehicle from the garage; (dd) Issuing unfounded formal warning notices; (ee) Failing to provide her with a designated parking space; (ff) Ignoring continuous vandalism to Plaintiff's personal vehicle; (gg) Ongoing distortion of facts; (hh) Frequently assigning tasks that were outside of the scope of her responsibilities; (ii) Creating a stressful environment; and (jj) Other actions that were unfair and retaliatory.

Amendment violation.  Defendants' motion regarding plaintiff's
remaining claims of NJLAD violations and Fourth, Eighth, Ninth
and Fourteenth Amendment violations was denied without prejudice
on procedural grounds.  Defendants move in their second motion
for summary judgment to have plaintiff's remaining claims
dismissed.

### III. **DISCUSSION**

#### A.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is
satisfied that "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 330
(1986); Fed. R. Civ. P. 56©).

An issue is "genuine" if it is supported by evidence
such that a reasonable jury could return a verdict in the
nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A fact is "material" if, under the
governing substantive law, a dispute about the fact might affect
the outcome of the suit.  Id.  In considering a motion for
summary judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the nonmoving party's evidence "is to be believed and

all justifiable inferences are to be drawn in his favor." <u>Marino</u>
<u>v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting
<u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of
demonstrating the absence of a genuine issue of material fact.
<u>Celotex Corp.</u>, 477 U.S. at 323.  Once the moving party has met
this burden, the nonmoving party must identify, by affidavits or
otherwise, specific facts showing that there is a genuine issue
for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion
for summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party
opposing summary judgment must do more than just rest upon mere
allegations, general denials, or vague statements.  <u>Saldana v.</u>
<u>Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

### B.   New Jersey Law Against Discrimination

Defendants argue that plaintiff's claims for violation
of the New Jersey Law Against Discrimination ("NJLAD") for
hostile work environment based on sexual harassment, Counts One
through Three, should be dismissed because: 1) the single,
isolated interaction between plaintiff and Gindhart is
insufficient to create a hostile work environment as a matter of
law; 2) Gindhart was not plaintiff's immediate supervisor and,
therefore, defendants cannot be held vicariously liable for his

8

behavior; and 3) because the City followed its anti-harassment policy.[9]

### (1) Hostile Work Environment

In order to state a claim for a hostile work environment under the NJLAD, the employee must show that the complained of conduct (1) would not have occurred but for the employee's gender, and that it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 626 A.2d 445, 453 (N.J. 1993). When the harassing conduct is sexual or sexist in nature, the first element will be automatically satisfied. Id. at 454.

---

[9]     In their first motion for summary judgment, defendants argued that plaintiff's NJLAD claims were barred by the statute of limitations. Plaintiff produced a "Stipulation Between the Parties for Voluntary dismissal and Waiver of Limitation Claims by the Defense" in which the parties stipulated to a waiver of the statute of limitations defense. Defendants acknowledged that the stipulation rendered their statute of limitations defense inapplicable but sought to argue in their reply that plaintiff failed to establish a *prima facie* case of either sexual harassment or a hostile work environment, and that she could not impute vicarious liability onto defendants for Gindhart's conduct. The Court ruled that it would not consider arguments raised for the first time in a reply brief and dismissed the motion in part without prejudice. See Bernstein, 2011 WL 2559369, at *3 ("A party may not raise new arguments in their reply brief.")(citing Bayer AG v. Schein Pharm., Inc., 129 F.Supp.2d 705, 716 (D.N.J. 2001) (other citations omitted)).

Plaintiff has met the first element of her claim.[10]
Gindhart's grabbing plaintiff by the waist and telling her "I can
tell what you need is a really good goose in the ass . . . but
you're not ready for it yet," as well as his later reference to
her as a "dike bitch" were comments made to or about plaintiff
based on her sex or sexual orientation.

With regard to elements (2) through (4), plaintiff has
not met her burden.  Particularly, plaintiff has not made the
requisite showing that the harassing conduct was "severe and
pervasive."  "Whether conduct is severe or pervasive requires an
assessment of the totality of the relevant circumstances ...
which involves examination of (1) the frequency of all the
discriminatory conduct; (2) its severity; (3) whether it is

---

[10] The Court also notes that plaintiff under her "Point II"
"for the sake of brevity ... simply incorporate[d]" into her
argument the facts set forth in her statement of facts.  A party
cannot simply incorporate all her alleged facts stated in the
statement of facts into her memorandum of law to effectively
oppose summary judgment.  See Fed.R.Civ.P. 56 ("A party asserting
that a fact cannot be or is genuinely disputed must support the
assertion by ... citing to *particular* parts of materials in the
record..." )(emphasis added).  It is not the Court's
responsibility to review the entire statement of facts and act as
an advocate for a particular party by selecting those facts which
may support the argument.  See Albrechtsen v. Board of Regents of
University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002)
(stating "'Judges are not like pigs, hunting for truffles buried
in' the record.")(quoting United States v. Dunkel, 927 F.2d 955,
956 (7th Cir. 1991)).  Nonetheless, summary judgment is not being
granted on plaintiff's NJLAD claim on this ground.  There are no
facts alleged in plaintiff's statement of facts that, if properly
plead in support of her arguments, would have established a *prima
claim* for hostile work environment.

10

physically threatening or humiliating, or a mere offensive
utterance; and (4) whether it unreasonably interferes with an
employee's work performance."  Godfrey v. Princeton Theological
Seminary, 196 N.J. 178, 196, 952 A.2d 1034, 1045 (N.J. 2008)
(internal quotation marks omitted) (citing Taylor v. Metzger, 152
N.J. 490, 506, 706 A.2d 685 (1998); Green v. Jersey City Bd. of
Educ., 177 N.J. 434, 447, 828 A.2d 883 (2003)).  The New Jersey
Supreme Court emphasized that it is "the *cumulative* effect of the
various incidents" that must be considered when evaluating the
severity or pervasiveness of the harassing conduct.  Id. (citing
Lehmann, 132 N.J. at 607, 626 A.2d 445.

        Here, plaintiff has alleged the following instances of
harassment: that Gindhart grabbed her and said "I can tell what
you need is a really good goose in the ass . . . but you're not
ready for it yet,"; his statement that he would get that "bitch
dike;" and his subsequent glaring stares.  Assessing the
cumulative effect of these few instances, plaintiff has not plead
the required severity or pervasiveness needed to make out a
hostile work environment claim.  See, e.g., Godfrey, 196 N.J. at
197, 952 A.2d at 1045 ("In most cases, it is the cumulative
impact of successive incidents from which springs a fully formed
hostile work environment.").

        Acknowledging the few instances of alleged hostility,
plaintiff argues that the harassment may occur only once to be

actionable.  For example, in Taylor v. Metzger, 152 N.J. 490,
502-03, 706 A.2d 685, 691 (N.J. 1998), the court ruled that one
"remark had an unambiguously demeaning racial message that a
rational factfinder could conclude was sufficiently severe to
contribute materially to the creation of a hostile work
environment."  In Taylor, however, "the severity of the remark
... was exacerbated by the fact that it was uttered by a
supervisor or superior officer."  The court took particular note
that the defendant "was not an ordinary co-worker of plaintiff;
he was the Sheriff of Burlington County, the chief executive of
the office in which plaintiff worked" which fact "greatly
magnifie[d] the gravity of the comment."  Id. (stating that
"defendant did more than merely allow racial harassment to occur
at the workplace, he perpetrated it. That circumstance, coupled
with the stark racist meaning of the remark, immeasurably
increased its severity.").

        In this case, the remark was made by an independent
contractor who had no supervisory relationship with plaintiff.
Thus, there is no "added weight" to Gindhart's remarks.
Additionally, Gindhart's "glares" at plaintiff do not rise to the
level of hostility required.  See Harley v. U.S. Secretary of
Treasury, 444 Fed.Appx. 594, 595 (3d Cir. 2011) (agreeing with
lower court that "glares" between 1996 and 1998 and two e-mails
sent in 2004 did not amount to hostile work environment claim);

12

<u>Cokus v. Bristol Myers Squibb Co.</u>, 362 N.J.Super. 366, 382-83, 827 A.2d 1173, 1183 (Law Div. 2002) ("The fact that [plaintiff's] co-workers and superiors chose to limit their contact with her to business only and otherwise ignored her, stared/glared at her when they walked by her, and, even as plaintiff believed-talked about her behind closed doors," did not create a hostile environment).  There is no evidence that Gindhart communicated in any way with plaintiff after the one incident.

Accordingly, plaintiff has not plead facts to support a *prima facie* claim of hostile work environment due to sexual harassment.

### (2) Vicarious Liability

Even if plaintiff had made out a *prima facie* claim, defendants would not be vicariously liable for any harassment on the part of Gindhart.  In order for an employer to be vicariously liable for the hostile environment created by an employee, the plaintiff must demonstrate that the person engaging in the harassment was a "supervisor" with authority over the plaintiff who was acting as the employer's agent.  See <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); <u>Lehman</u>, 132 N.J. at 619-20, 626 A.2d at 462.  In determining whether an employee is a supervisor, the Court must consider "whether the power the offending employee possessed was reasonably perceived by the victim, accurately or not, as giving

that employee the power to adversely affect the victim's working life." Entrot v. BASF Corp., 359 N.J.Super. 162, 181, 819 A.2d 447 (App.Div. 2003) (emphasis added); see also Smith v. Exxon Mobil Corp., 374 F.Supp.2d 406, 421 n.37 (D.N.J. 2005).  Relevant factors include the power to fire or demote, the power to direct job functions, and any evidence that the alleged harasser possessed influence to control the workplace or restrict the alleged victim's freedom to ignore the alleged conduct.  Entrot, 359 N.J.Super. at 181.

There is no dispute that Gindhart was not plaintiff's supervisor.  He was hired by the City as an independent contractor to serve as solicitor for the City.  He had no power to fire or demote plaintiff, no power to direct her job functions, and possessed no influence to control or restrict plaintiff's freedom in the workplace.

Although Gindhart was not plaintiff's supervisor, an employer may be held liable for the sexual harassment of its co-employees or third parties.  See Velez v. City of Jersey City, 358 N.J.Super. 224, 234, 817 A.2d 409, 414 (App.Div. 2003)("[A]n employer may be held liable for sexual harassment under a theory of negligence based upon 'its failure to have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms.'")(citing Lehmann, 132 N.J. at 621, 626

14

A.2d 445).  "[E]mployer liability for co-worker harassment exists
only if the employer failed to provide a reasonable avenue for
complaint or, alternatively, if the employer knew or should have
known of the harassment and failed to take prompt and appropriate
remedial action."  Huston v. Procter & Gamble Paper Products
Corp., 568 F.3d 100, 104-05 (3d Cir. 2009).

          Defendants argue that they cannot be held liable for
any alleged harassment on the part of Gindhart because they had
an anti-harassment policy in place at the time and properly
investigated plaintiff's complaint.  In order to determine
whether the policy and procedures were adequate, the Court will
undertake a review of the events beginning with the harassment
and the City's handling of plaintiff's complaint.  See Velez, 358
N.J.Super. at 235 ("What is required is an evaluation of the
entire remedial process engaged in by the employer, including,
for example, the speed, diligence, and good faith with which a
sexual harassment investigation is undertaken.") (citing Payton
v. New Jersey Tpk. Auth., 148 N.J. 524, 537, 691 A.2d 321
(1997)).

### (3) City's Anti-Harassment Policy

          There is no dispute that defendants had a sexual
harassment policy in place at the time Gindhart made his

harassing comments to plaintiff.[11]  Even so, "[i]f a plaintiff can show that an employer had actual knowledge of the harassment and did not promptly and effectively act to stop it, liability ... may be appropriate under a theory that the employer intended the harassment, or was negligent or reckless in permitting it to occur."  <u>Velez,</u> 358 N.J.Super. at 234-35 (citing <u>Lehmann</u>, 132 N.J. at 622)(internal quotation marks omitted).

Evaluating the City's efforts in investigating plaintiff's complaint of sexual harassment, the Court finds that the City took effective and prompt remedial measures.  Gindhart was only employed a short time before the incident occurred with plaintiff.  Gindhart was hired on January 2, 2002 and the incident took place approximately two weeks later, on January 17, 2002.  That day, plaintiff complained of the incident to the Mayor's Chief of Staff, who told her to speak with Fitzgerald. Plaintiff states she called Fitzgerald and left him phone messages but there is no indication that she informed Fitzgerald

---

[11]     Plaintiff cites to Gindhart's deposition transcript in which he testified that he had no specific recollection of receiving the employee manual containing the sexual harassment policy when he was hired.  Defendants point out that Gindhart was deposed eight years after he was hired and testified that although he could not specifically recall receiving it he "probably" did.  Regardless of Gindhart's powers of recollection, the issue is not whether Gindhart received a copy of the policy as there is no evidence that he was unaware of the policy or did not know his actions may have violated the City's policy.  There was a written policy in place and the issue is whether the City took appropriate measures to deal with plaintiff's complaint.

of the incident at that time.  On January 22, 2002, after plaintiff wrote a memorandum to Fitzgerald detailing the incident with Gindhart, Fitzgerald telephoned plaintiff "within five minutes," and conducted a face-to-face meeting with her immediately thereafter.  That same day, Fitzgerald called Gindhart into his office and confronted him about plaintiff's accusations and informed Gindhart that his conduct would not be tolerated by the City.  After this meeting, Gindhart made the comment that he would "get that fuck'en bitch dike."  Plaintiff states that in subsequent days and weeks Gindhart would look at her with "deliberately intense glaring stares" but there was no further communication of any kind between Gindhart and plaintiff.

Within a short period of time after plaintiff complained of the incident, on February 25, 2002, Fitzgerald instructed Gindhart to remain off the premises where plaintiff's office was located.  Three days later, on February 28, 2002, the City commenced an investigation into Gindhart's conduct.  Over the course of less than a month, the investigator, Mary B. Halfpenny, Esq., interviewed approximately fifteen (15) different City employees.  On March 22, 2002, Ms. Halfpenny issued a written report based on her investigation concluding that Gindhart acted in an unprofessional manner.  Subsequently, on April 2, 2002, Gindhart resigned as Atlantic City Solicitor and has not been employed by the City since that date.

The Court finds no serious fault with the City's remedial efforts to investigate and take appropriate measures in response to plaintiff's complaint of sexual harassment. Accordingly, plaintiff's NJLAD claim set forth in Counts One, Two and Three of her complaint will be dismissed.

## C.   Retaliation under NJLAD

In its previous Opinion, the Court construed Count Four of plaintiff's complaint to allege a claim of retaliation under the NJLAD.  See Bernstein, 2011 WL 2559369, at *3.  Defendants argue that Count Four should be dismissed because: (1) the claim is barred by the applicable statute of limitations; (2) the claim is identical to the claims already dismissed on summary judgment; (3) the alleged acts of retaliation set forth in the claim do not constitute independent, adverse employment actions; and (4) plaintiff's thirty-six (36)[12] acts are not causally related to plaintiff's complaints regarding Gindhart's conduct in 2002.

### 1.   Statute of Limitations

Claims brought under the NJLAD are subject to a two year statute of limitations.  Montells v. Haynes, 133 N.J. 282,

---

[12]   Defendants argue that the alleged 36 acts of retaliation are not all distinct acts, but rather, a handful of employment actions that plaintiff repeats over and over again.  Defendants cite to portions of plaintiff's deposition testimony in which she states that certain acts relate to other acts.  Notwithstanding the overlap in some of plaintiff's alleged acts of retaliation, we shall deal with them separately, as listed, for ease of reference.

292-94, 627 A.2d 654, 659-60 (N.J. 1993).  Defendant argues that
any claim for retaliation that accrued before December 31, 2005,
or two years before plaintiff filed her complaint on December on
December 31, 2007, is time-barred.

As noted in the Court's previous Opinion, with regard
to the first complaint filed in state court, the parties entered
into a "Stipulation Between the Parties for Voluntary dismissal
and Waiver of Limitation Claims by the Defense" in which the
parties stipulated that:

> the claims of Harriann C. Bernstein [may] be
> raised in a newly filed Complaint in the Superior
> Court, and further that any and all claims which
> have been raised ... may be renewed in the newly
> filed Complaint so as to preclude any claim or
> defense on the basis of statute of limitation,
> latches or delay.

See Bernstein, 2011 WL 2559369, at *2.

Plaintiff argues that she raised her retaliation claim
in her first state court complaint filed on April 25, 2002
("first complaint"), and, therefore, the defendants agreed to
waive any statute of limitations defense.  Plaintiff states that
in her first complaint, Count One, paragraph eight, she alleged:

> Commencing immediately upon defendant Langford's
> appointment of Joseph C. Gindhart, Esquire as
> Senior Counsel within the Atlantic City
> Solicitor's Office, plaintiffs, each individually,
> jointly and separately, were subjected to a severe
> and pervasive pattern and practice of
> discrimination at the workplace so as to create a
> hostile and unbearable environment, all in
> violation of the New Jersey Law Against
> Discrimination, N.J.S.A. 10:5-1, et seq.

19

Plaintiff argues New Jersey only requires "notice pleading" and since she alleged "et seq." which incorporates the anti-retaliation provision at N.J.S.A. 10:5-12(d), that she adequately pled retaliation.

"New Jersey is a notice-pleading state, meaning that only a short statement of the claim need be pleaded." <u>Coehlo v. Newark Bd. of Educ.</u>, 2011 WL 4345822, at *3 (N.J.Super.A.D. Sept. 19, 2011)(citing <u>Velop, Inc. v. Kaplan</u>, 301 N.J.Super. 32, 56 (App.Div. 1997)).  In addition, New Jersey Rule of Civil Procedure 4:5-7 requires that "all pleadings shall be liberally construed in the interest of justice." <u>See</u> Rule 4:5-7. Nonetheless, the pleadings must still "fairly apprise the adverse party of the claims and issues to be raised at trial." <u>Spring Motors Distribs., Inc. v. Ford Motor Co.</u>, 191 N.J.Super. 22, 29 (App.Div. 1983), aff'd in part and rev'd in part on other grounds, 98 N.J. 555, 489 A.2d 660 (1985).

Even viewing plaintiff's allegation liberally, and construing it in the interests of justice, it is difficult to conclude that plaintiff put defendants on notice that she intended to raise a retaliation claim in her first complaint. Although N.J.S.A. 10:5-12(d) does prohibit retaliation,[13] nowhere

---

[13]    Section 10:5-12(d) makes it an unlawful employment practice:

For any person to take reprisals against any person

in plaintiff's first complaint does she specifically cite to that provision.  Simply referencing the entire statute concerning the law against discrimination as "et seq." does not put a defendant on notice that a specific claim of retaliation is claimed.[14]

This omission could have been rectified if there were some facts plead in the first complaint that alerted defendants that a retaliation claim was being raised.  Plaintiff states that these allegations were incorporated by reference into allegations more specifically plead in Counts Eight and Nine of her first complaint.  Those Counts, however, do not provide any facts in support of a retaliation claim.  Rather, Count Eight generally states that the City should have known that plaintiff was subjected to harassment, breached its duty of care and was negligent.  Count Nine generally alleges that Mayor Langford and Fitzgerald had knowledge of the harassment and ignored Gindhart's

------

> because that person has opposed any practices or acts
> forbidden under this act or because that person has
> filed a complaint, testified or assisted in any
> proceeding under this act or to coerce, intimidate,
> threaten or interfere with any person in the exercise
> or enjoyment of, or on account of that person having
> aided or encouraged any other person in the exercise or
> enjoyment of, any right granted or protected by this
> act.

N.J.S.A. 10:5-12(d).

[14]     Title 10, Chapter 5, of the New Jersey Statute pertains to the law against discrimination and currently has 69 sections, not including subsections, or repealed sections.  Although the table only references sections up to 10:5-49, many of the sections have additions such as 10:5-2, 10:5-2.1, and 10:5-2.2.

conduct.

Thus, even the most liberal reading of plaintiff's first complaint does not put defendants on notice that plaintiff intended to raise a retaliation claim.  The retaliation claim is simply not plead in the first complaint and there are no facts upon which the Court could construe such a claim.[15]  Given that the retaliation claim was not plead in the first complaint, the stipulation signed by the parties to waive any limitations defense for claims plead in the first complaint does not apply. Therefore, any retaliation claim that accrued before December 31, 2005, is barred by the two year statute of limitations.

When such claims accrue, however, is subject to the "continuing violations doctrine."  "The doctrine provides that when an individual experiences a 'continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases.'"  Roa v. Roa, 200 N.J. 555, 566, 985 A.2d 1225, 1231 (N.J. 2010) (citing Wilson v. Wal-Mart Stores, 158 N.J. 263, 272, 729 A.2d 1006 (1999)). Continuing violations, however, are distinguished from discrete acts of discrimination.  Id. at 567 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106, 120 (2002)).  Discrete acts would be

_____

[15]    In contrast, in Count Four of her complaint filed on December 31, 2007 ("second complaint"), plaintiff alleges 36 specific counts of retaliation.

"termination, failure to promote, denial of transfer, or refusal to hire" which occur on the day that it happens, whereas continuing violations would be "a series of separate acts that collectively constitute one 'unlawful employment practice'... [and] accrue[] on the date on which the last component act occurred." Id. at 566-67; see also Bernstein, 2011 WL 2559369, at *4-5. "Accordingly, for limitations purposes, a 'discrete retaliatory or discriminatory act occur[s] on the day that it 'happen [s].'" Roa, 200 N.J. at 567 (citing Morgan, 536 U.S. at 110).

In its previous Opinion, the Court ruled that the following alleged retaliatory acts were discrete acts that occurred prior to December 31, 2006[16] (as listed by letter in plaintiff's second complaint) (hereinafter "Group I"):

> (a)  Plaintiff's loss of title as a division head and exclusion from attendance at division head meetings;
> (b)  Her removal from her normal office space to a cubicle with no quiet work area or privacy;
> ©)  Removal of her privileges regarding the use of an official city vehicle that she used to perform city duties;

---

[16]    In its prior Opinion, the Court analyzed plaintiff's claims brought under the Conscientious Employment Protection Act ("CEPA") which has a one year statute of limitations.  See Bernstein, 2011 WL 2559369, at *5.  The Court used December 31, 2006 as the basis for the division of plaintiff's claims into groups because plaintiff filed her second complaint on December 31, 2007, one year prior to which was December 31, 2006.  Id. The Court divided plaintiff's alleged acts of retaliation into three groups which are referred to in this Opinion as Groups I, II and III.  See infra.

      (d)  An unfounded claim of insubordination and unsubstantiated disciplinary action when she attempted to collect money for a sick child, when it was common practice for employees of Atlantic City to encourage involvement in charitable causes;

      (f)  Improper limitation of her benefits pursuant to the Family Medical Leave Act;

      (g)  Denial of promotion to Executive Assistant;

      (h)  Improperly converting a grievance hearing into a disciplinary hearing;

      (I)  Being held to a different standard when she attempted to collect money for a child's trip;

      (k)  Impeding professional advancement by ignoring civil service rules;

      (p)  Refusing city council's request to appoint her to the position of Executive Assistant;

      (t)  Filing unfounded and improper charges of violating co-workers' privacy rights;

      (u)  Wrongly accusing her of illicitly photographing workers with a cell phone;

      (v)  Relocating her from City Hall to the City Yard, which has long been considered "punishment";

      (x)  Continuing to base Plaintiff's subordinate in City Hall;

      (cc)  Reversing policy and prohibiting Plaintiff her city vehicle from the garage;

      (dd)  Issuing unfounded formal warning notices; and

      (ee)  Failing to provide her with a designated parking space.

Bernstein, 2011 WL 2559369, at *5 n.17.

Defendants argue that all but two of the discrete acts listed above occurred prior to December 31, 2005, and therefore, are also time-barred by NJLAD's two year statute of limitations. Defendants claim that the two incidents that occurred on or after December 31, 2005 are: (1) plaintiff's relocation from City Hall to the City Yard (2006); and (2) the disciplinary charges brought against plaintiff related to plaintiff's alleged invasion of a co-worker's privacy rights (2006).  Plaintiff does not

24

specifically dispute this assertion and does not provide any
facts concerning when each of the alleged retaliatory acts
occurred.  Plaintiff simply argues that summary judgment should
be denied based on the continuing violation theory and states
that "these acts were perpetrated commencing in 2002 through her
retirement in 2011."

As explained above, "discrete acts" are not subject to
the continuing violation doctrine because they occur on the day
that they happen.  See Roa, 200 N.J. at 567.  Therefore, the
discrete acts listed above are barred by the two year statute of
limitations, with the exception of (1) events concerning
plaintiff's relocation from City Hall to the City Yard; and (2)
the disciplinary charges related to plaintiff's alleged invasion
of a co-worker's privacy rights - which events defendants admit
occurred in 2006.

We now turn to the alleged acts of retaliation that
were designated by the Court in its previous Opinion as occurring
after December 31, 2006 (hereinafter "Group II"):

(j)  Effort by the City to ignore established
     procedures;
(m)  elimination of her presence at meetings after she
     questioned separation of church and state;
(n)  Permitting a hostile work environment;
(o)  Failing to respond to repeated communications
     regarding appointment to positions;
(q)  Violating the chain of command;
(r)  Fraudulently stating that all Executive Assistant
     titles were being eliminated then re-created all
     positions;
(s)  Approving office equipment and removing it on

25

several occasions;
(w)  Housing Plaintiff six feet from diesel fumes;
(y)  Denying relocation of computer equipment;
(z)  Refusing to relocate a specialized printer;
(aa) Denying continued access to e-mail and other business tools;
(hh) Frequently assigning tasks that were outside of the scope of her responsibilities;
(ii) Creating a stressful environment; and
(jj) Other actions that were unfair and retaliatory.

Bernstein, 2011 WL 2559369, at *6 n.18.

Defendants argue that all of the above actions, with the exception of "creating a stressful environment" not only occurred prior to December 31, 2006, but occurred prior to December 31, 2005.  Defendants also argue that the remaining alleged retaliatory acts all occurred before December 31, 2005 (hereinafter "Group III"):

(e)  Improper limitation on Plaintiff's medical benefits, including refusal to make a payment which was covered under sick and vacation leave;
(l)  Denying respect and latitude prescribed for Union Presidents;
(bb) Permitting Plaintiff to be bullied and failing to take corrective action;
(ff) Ignoring continuous vandalism to Plaintiff's personal vehicle; and
(gg) Ongoing distortion of facts.

Bernstein, 2011 WL 2559369, at *6 n.18.

Plaintiff provides no facts in opposition to defendants' claim that the above acts all occurred prior to December 31, 2005, except for a general recitation of the law concerning continuing violation theory.  Regardless, however, there is some confusion about when some of the events in Groups

26

II and III occurred.  For example, plaintiff's allegation "(v)" relocating her from City Hall to the City Yard, which occurred in 2006, is related to her subsequent allegations "(w)" through "(z)" regarding housing her near diesel fumes, allowing her subordinate to remain in City Hall, denying relocation of her computer and printer, which presumably also occurred in 2006, not prior to December 31, 2005.  Given this confusion, as well as the fact that the Court labeled Group II as events occurring after December 31, 2006 in its previous Opinion, the Court will not bar these claims on grounds of statute of limitations.  However, even assuming for purposes of this motion that those claims are not barred by the limitations period, plaintiff has failed to make out a *prima facie* case of retaliation.

> ### 2.   *Prima Facie* Retaliation Claim

A claim of retaliation under the NJLAD uses the burden shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 803-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1974).  <u>See</u> <u>Carmona v. Resorts Int'l Hotel, Inc.</u>, 189 N.J. 354, 370, 915 A.2d 518, 528 (N.J. 2007) (acknowledging that New Jersey looks to case law under Title VII claims for guidance in developing standards for NJLAD claim including adopting the framework formulated in <u>McDonnell Douglas</u>).  Under this framework, a plaintiff must first establish a *prima facie* case. To establish a *prima facie* case for a retaliation claim under the

NJLAD, a plaintiff must show: (1) she engaged in a protected employee activity; (2) the employer took an adverse action against her after, or contemporaneous with, her activity; and (3) a causal link exists between her activity and the employer's action against her. Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).

If a plaintiff establishes a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 56 (1981)). This is a "relatively light burden." Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production shifts back to the plaintiff, who must now show by a preponderance of

the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)).

The burden shifting framework outlined above is the same that was applied in the Court's previous Opinion assessing plaintiff's CEPA claim.  See Bernstein, 2011 WL 2559369, at *4. The Court ruled that none of the actions listed in Groups II or III constituted "adverse employment acts."  Adverse actions include "discharges, suspensions, transfers, terminations, changes affecting the length of the workday, compensation decreases, change in the amount of hours worked, termination of fringe benefits, alterations in promotional procedures or changes in the plaintiff's office arrangements and facilities," or actions that impact plaintiff's compensation or rank.  Id. at *6 (citing Beasley v. Passaic County, 873 A.2d 673, 685-86 (N.J.Super.Ct. App.Div. 2005); Noto v. Skylands Cmty. Bank, 2005 WL 2362491, at *4 (N.J.Super.Ct.App.Div. Sept. 28, 2005)).  The Court ruled that "plaintiff's claims are more accurately characterized as mere complaints about mildly unpleasant workday experiences."  Id.

The Court also ruled that plaintiff failed to establish the causal link between her protected activity and defendants'

29

allegedly retaliatory actions.  Id.  The Court found that "the record does not contain any circumstantial evidence that supports a causal link, nor does it indicate any pattern of antagonism by Defendants."  Id. (determining that any causal link between the alleged conduct in 2007 and plaintiff's protected activity in 2002 occurring over a span of five years and two mayoral administrations was extraordinarily tenuous).

For the same reasons that plaintiff's CEPA claim failed, plaintiff's retaliation claim under the NJLAD for acts listed under Group II and III fails.  See id.  Plaintiff has failed to allege adverse actions taken against her by her employer after, or contemporaneous with, her activity, and failed to allege facts that could show a causal link exists between her activity and the employer's action against her.

Thus, the remaining retaliation claims are the two discrete acts in Group I not barred by the applicable two year statute of limitations: (1) plaintiff's relocation from City Hall to the City Yard (2006); and (2) the disciplinary charges related to plaintiff's alleged invasion of a co-worker's privacy rights (2006).  These two claims were not addressed as part of plaintiff's CEPA claim in the earlier Opinion because, as discrete acts that occurred prior to CEPA's one year statute of limitations, those claims were barred.  Since NJLAD has a two year statute of limitations, the cut-off date is December 31,

2005, and since both discrete acts occurred in 2006, the Court
will apply the burden-shifting framework outlined above to these
two remaining claims.

As her *prima facie* claim, plaintiff alleges that: (1)
her reporting of sexual harassment by Gindhart was a protected
employee activity; (2) the employer took adverse actions against
her when it transferred her to the City Yard and instituted
disciplinary charges against her; and (3) a temporal link exists
between the protected activity and the retaliation.

The Court finds that plaintiff has meet the first
element of her *prima facie* claim; a report of sexual harassment
is clearly a protected employee activity.  See Harris v. Railroad
Constructors, Inc., 754 F.Supp.2d 681, 688 (D.N.J. 2010) (finding
plaintiff engaged in protected activity by reporting the alleged
harassment to his employer).  Plaintiff has not, however,
established that the relocation of her work space from City Hall
to the City Yard, or the filing of disciplinary charges,
establishes an adverse employment action.  See Langley v. Merck &
Co., Inc., 186 Fed.Appx. 258, 260 (3d Cir. 2006) (finding that a
change in title, office, and reporting relationship was
insufficient to make the reassignment an adverse employment
action); Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 426-
27 (D.N.J. 2003) (finding that issuance of a notice of
disciplinary action does not "amount to the type of tangible,

31

adverse employment action required to state an actionable claim
of retaliation under Title VII and the NJLAD."). Neither of
these two actions were "'serious and tangible enough to alter
[plaintiff's] compensation, terms, conditions, or privileges of
employment.'" See Langley, 186 Fed.Appx. at 260 (citations
omitted).

Even if these two actions could be considered adverse,
plaintiff has not shown a "temporal link" between the protected
activity and the retaliation. As the Court stated in its earlier
Opinion, plaintiff has failed to show how incidents that occurred
years apart and under different mayoral administrations are
causally linked. See Bernstein, 2011 WL 2559369, at *6 (citing
Calabria v. State Operated Sch. Dist. for City of Paterson, No.
06-6256, 2008 WL 3925174, at * 6 (D.N.J. Aug. 26, 2008); and
Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir.
2000)).

Therefore, plaintiff has not established a *prima facie*
claim of retaliation under the NJLAD. The Court will enter
summary judgment in favor of defendants with respect to
plaintiff's NJLAD claims.

### D.   Section 1983

Plaintiff states in her complaint that based on the
actions of defendants as alleged in connection with her NJLAD and
CEPA claims, that defendants violated her Fourth, Eighth, Ninth

32

and Fourteenth Amendment rights.[17]  Defendants argue that
plaintiff's Section 1983 claims are barred by the statute of
limitations, or alternatively, do not give rise to a
constitutional violation.  Plaintiff provides no argument in
opposition.

To state a claim under 42 U.S.C. § 1983, a plaintiff
must show that: (1) the conduct challenged was committed by a
person acting under color of state law; and (2) that the conduct
deprived him of his rights, privileges, or immunities secured by
the Constitution or laws of the United States.  See Shuman ex
rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d
Cir. 2005).  The statute of limitations for Section 1983 claims
is the same as the personal injury limitations period for the
State in which the action arose.  See Wallace v. Kato, 549 U.S.
384, 387, 127 S.Ct. 1091, 1094 (2007).  In New Jersey, the
statute of limitations for personal injury cases is two years.
See Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir.
2010), citing  N.J.S.A. 2A:14-2.

Plaintiff provides no independent factual support for
her claims of constitutional violation.  According to plaintiff's
second complaint, her claims are based simply the "aforementioned
actions of Defendants" which refer back to plaintiff's CEPA and

_____

[17]    Plaintiff's First Amendment claim has been dismissed.
See Bernstein, 2011 WL 2559369, at *7.

NJLAD claims.  Such allegations, however, as addressed separately below, do not support any claims for a constitutional violation.

### 1.    Fourth Amendment

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Plaintiff has plead no facts and submitted no evidence that she was subject to an unreasonable search or seizure in violation of the Fourth Amendment.  This claim shall be dismissed.

### 2.    Eighth Amendment

The Eighth Amendment states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S.C.A. Const. amend. VIII.

Plaintiff has plead no facts and submitted no evidence that she was subject to excessive bail, excessive fines or cruel or unusual punishment in violation of the Fourth Amendment.  This claim shall be dismissed.

### 3.    Ninth Amendment

The Ninth Amendment provides: "The enumeration in the

Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S.C.A. Const. amend. IX.  "[T]he Ninth Amendment does not independently provide a source of individual constitutional rights." <u>Perry v. Lackawanna County Children & Youth Services</u>, 345 Fed.Appx. 723, 726 (3d Cir. 2009) (citing <u>Jenkins v. C.I.R.</u>, 483 F.3d 90, 92 (2d Cir. 2007); <u>Schowengerdt v. United States</u>, 944 F.2d 483, 490 (9th Cir. 1991)).  Therefore, this claim will be dismissed.

### 4.  Fourteenth Amendment

The Fourteenth Amendment provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

Plaintiff has plead no facts and submitted no evidence that she was denied the privileges or immunities of a U.S. citizen, or deprived life, liberty or property without due process of law, or denied equal protection under the laws in violation of the Fourteenth Amendment.  This claim shall be dismissed.

Accordingly, all of plaintiff's constitutional claims shall be dismissed because she has not provided any facts in support of such claims.  Moreover, even if, as plaintiff asserts, the factual allegations that form the basis of her Section 1983

35

claims are the same that form her CEPA and NJLAD claims, those claims have all been dismissed on statute of limitations grounds, or dismissed for lack of merit.  The Court will enter summary judgment in favor of defendants with respect to plaintiff's Section 1983 claims.[18]

### IV.   CONCLUSION

For the reasons expressed above, defendants' motion for summary judgment will be granted.  An appropriate order will be entered.

Date: March 30, 2012                    s/Noel L. Hillman
                                        NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

---

[18]    Given that all of plaintiff's NJLAD and Section 1983 claims have been dismissed, plaintiff cannot hold individual defendants liable or the City vicariously liable for alleged constitutional violations and, therefore, Counts Seven and Eight of her second complaint, as well as any claim for punitive damages, are also dismissed.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 272, 101 S.Ct. 2748 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

36